**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**CORI WILLIAMS (#536814)**

**VERSUS**

**DARREL VANNOY, ET AL.**

**CIVIL ACTION**

**NO. 21-153-BAJ-SDJ**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**.

Signed in Baton Rouge, Louisiana, on February 13, 2024.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CORI WILLIAMS (#536814)**

**VERSUS**

**DARREL VANNOY, ET AL.**

CIVIL ACTION

NO. 21-153-BAJ-SDJ

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. Doc. 1. The State has filed an opposition to Petitioner's application, and Petitioner has filed a traversal. *See* R. Docs. 14-16. There is no need for oral argument or for an evidentiary hearing.

Petitioner Cori Williams challenges his conviction, entered in 2007 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of second-degree murder and one count of attempted second-degree murder. Petitioner contends that (1) he was provided with ineffective assistance of counsel at trial, (2) that prejudicial statements were made by the prosecutor, and (3) the trial court gave an erroneous jury instruction.

**Factual Background**

The facts, as accurately summarized by the First Circuit, are as follows: On July 21, 2006, around 2 o'clock a.m., Petitioner and Berman Hudson went to Ragusa's Meat Market to purchase some cigarettes. Upon arriving at the store, which was open for business but only serving customers through a walk-up service window, petitioner approached the area near the window and waited. Several other individuals were also present in the area near the service window. Hudson went to another area to use the restroom. Shortly thereafter, Ulysses and Raymond Jones arrived at Ragusa's to purchase some beer. Ulysses approached the service window and immediately

placed his order. According to Ulysses, when he walked up, Petitioner and several other individuals were standing in the area, but they did not appear to be in line. Petitioner confronted Ulysses about "skipping" the line, and a verbal altercation ensued.

Later, when Berman Hudson returned to the area near the service window, he observed Petitioner and Ulysses arguing. Hudson, who had just been released from prison, also became involved, when he too, began arguing with Ulysses. The men continued arguing even after Ulysses received his beer and walked back towards his vehicle. At several times during the verbal altercation, Hudson aggressively walked up towards Ulysses as if he was going to fight. Petitioner pulled Hudson back several times and claimed he was trying to diffuse the situation without a physical confrontation. Ulysses, on the other hand, claimed that Petitioner pulled Hudson back and stated that he "want[ed] a piece of [Ulysses]."

Eventually, the verbal exchange escalated to a physical encounter. By this point, Raymond, who had been waiting at his vehicle, also became involved. Petitioner and Ulysses fought first. According to Ulysses, Petitioner hit him once and rendered him unconscious. Bystanders later helped to put Ulysses into Raymond's vehicle. When Hudson approached and attempted to join in the fight, Raymond hit him once and knocked him out. Finally, Petitioner and Raymond started fighting. During the fight, Raymond pushed Petitioner against his vehicle and bit petitioner's ear. Immediately thereafter, Petitioner retreated to his vehicle and Raymond ran away towards his. When Petitioner emerged from his vehicle, he walked toward the area where Raymond's vehicle was parked and opened fire on the vehicle as Raymond attempted to drive away with Ulysses. Petitioner fired approximately seventeen shots from a Glock 9mm. He then returned to his vehicle and, after several bystanders placed Hudson inside the vehicle, Petitioner drove away.

Subsequently, after traveling less than one mile from Ragusa's, the vehicle Raymond was driving crashed into a utility pole. Raymond had gunshot wounds in his right thigh, right calf, and back. The bullet that entered his back pierced his left lung, and Raymond died as a result of his injuries. Numerous bullet holes were found in the exterior and interior of the vehicle. Ulysses Jones was not wounded by the gunfire. *See State v. Williams,* 08-1292 (La. App. 1 Cir. 2/13/09), 2009 WL 385780.

## Procedural History

Petitioner was indicted for the second-degree murder of Raymond Jones and the attempted second-degree murder of Ulysses Jones. After a jury trial on August 6-9, 2007, Petitioner was found guilty as charged. On February 25, 2008, Petitioner was sentenced to life without benefit of probation, parole, or suspension of sentence for second-degree murder, and 25 years at hard labor for attempted second-degree murder.

Petitioner appealed, and his conviction and sentence were affirmed by the First Circuit Court of Appeal on February 13, 2009. Petitioner sought writs, which were denied by the Louisiana Supreme Court on June 25, 2010.

On June 24, 2011, Petitioner filed an Application for Post-Conviction Relief. The commissioner recommended denial on April 4, 2012. Several years later, on March 29, 2019, the trial court denied the application for the reasons stated by the commissioner.

Petitioner then sought writs in the First Circuit Court of Appeal and the Louisiana Supreme Court, which were denied on November 12, 2019, and February 9, 2021, respectively.

The instant Petition for Writ of Habeas Corpus was filed by Petitioner on March 10, 2021.

**Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that all Petitioner's claims must be rejected. As discussed below, the Court finds that Petitioner's claims are without merit.

## Substantive Review

## Ineffective Assistance of Counsel

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed petitioner by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive petitioner of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id.*

## Claim 1: Denial of Right to Testify

Petitioner asserts that his counsel was aware of his desire to testify and stated to the jury that Petitioner would testify; however, Petitioner's counsel rested without ever calling Petitioner. Petitioner alleges that he desired to testify to give the jury a chance to hear from him directly regarding the circumstances of the shooting and weigh his testimony, demeanor, and credibility. Petitioner further alleges that, if he had been allowed to testify regarding the facts leading up to the shooting, the jury could have determined that, at the time of the shooting, Petitioner lost his ability to reason and act rationally. Presumably, as set forth in his Application for Post-Conviction Relief, Petitioner specifically wanted to testify regarding the injury to his ear and having heard the deceased victim asking his brother for a gun.

There are references in the record to Petitioner's intent to testify. In his opening statement, Petitioner's counsel told the jury, "You will hear that from the defendant himself." *See* R. Doc. 12-20, p. 19. Counsel also stated, "And it won't be just my client telling you that." *See* R. Doc. 12-20, p. 20-21. The trial judge was also under the impression that Petitioner was going to testify, asking during the defense's case, "How long is your client going to be?" *See* R. Doc. 12-25, p. 43. However, counsel rested without calling Petitioner. Nothing in the record reveals trial counsel's exact reasoning for the change in strategy, and Petitioner did not object or otherwise notify the Court of his desire to still testify.

Regardless, Petitioner has not shown that there is a reasonable probability that the outcome of the trial would have been different if he had been called to testify. At the time Petitioner and Raymond went to their vehicles, the altercation between the two men had ended. Nevertheless, Petitioner retrieved a gun from his vehicle, walked back to where Raymond and Ulysses were parked, and began firing directly at their vehicle as they attempted to drive away. As noted by the First Circuit, Petitioner had time for self-reflection, and any rational trier of fact could have concluded that the mitigating factors which reduce homicide to manslaughter were not present in this case. The jury came to this conclusion with all the information Petitioner alleges he would have relayed in his testimony. Petitioner's statement to the police wherein he stated that he "went crazy" after his ear was bitten was admitted, and other witnesses testified about Raymond's statements about a gun. Petitioner's assertion that his cumulative testimony would have changed the outcome of the trial due to his credibility and demeanor is speculative at best. As such, this claim is without merit.

**Claim 2: Failure to make a *Batson* challenge**

Petitioner asserts that the State used all of its peremptory challenges to exclude jurors based solely on their race, without objection from Petitioner's counsel. First, Petitioner is incorrect regarding the number of peremptory challenges. As noted by the Commissioner, the State used only seven of its allotted challenges, and of those seven, only five were lodged against black jurors.

Moreover, Petitioner's claim is entirely conclusory. Petitioner has identified no prospective juror who was improperly excused by the prosecutor on the basis of race or gender. Nor has Petitioner pointed to anything in the record that would suggest an inference of discrimination. Because Petitioner has not presented evidence showing that there was in fact a basis for a *Batson* challenge, he cannot meet his burden to prove that counsel was ineffective for failing to make such a challenge. *See*, *e.g.*, *Dennis v. Vannoy*, 2017 WL 9855222, at *15 (E.D. La. 2017), *Stogner v. Cain*, , 2013 WL 2444667, at *19 (E.D. La. 2013); and *Jackson v. Cain*, 2011 WL 870060, at *7 (E.D. La. 2011). Conclusory allegations and bald assertions are insufficient to support a petition for a writ of habeas corpus.

**Claim 2: Failure to interview Laqueshia Dangerfield**

Petitioner asserts that his trial counsel was ineffective due to his failure to interview Laqueshia Dangerfield prior to trial. Dangerfield was in a relationship with Petitioner at the time of the incident, and Petitioner was driving Dangerfield's car the night of the shooting.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989).

In the instant matter, Petitioner alleges that had Dangerfield been interviewed trial counsel would have learned that Petitioner regularly washed Dangerfield's car which was the car he was driving on the date of the crime. Petitioner asserts that this testimony could have been used against the State's attempt to poison the minds of the jury by implying that the car was washed in order to tamper with evidence.

Petitioner's argument that this information, along with other unspecified information from Dangerfield, would have altered the outcome of the trial is without merit. Since the car had been washed by the time it was located, no fingerprints could be obtained. However, Petitioner's identity was not at issue. Petitioner never denied his involvement. As such, the information about the car was not relevant to Petitioner's defenses of self-defense and manslaughter. Additionally, in light of all of the other evidence against Petitioner, this information was of little or no importance to establishing Petitioner's guilt. Any testimony that Petitioner regularly washed the car would not have changed the outcome of the trial. As such, trial counsel was not ineffective for failing to interview Dangerfield, and this claim is without merit.

**Claim 4: Failure to object to statements of the prosecutor**

Petitioner asserts that his trial counsel was ineffective for failing to object to several comments made by the prosecutor. During his closing statement, the prosecutor stated, "Well, the evidence shows he's dishonest, he carries guns, and he does hang out with convicted felons." Presumably this is the statement Petitioner asserts should have been objected to by his counsel. However, any objection to this statement would have been meritless. The evidence showed that Berman Hudson, who engaged in the altercation alongside Petitioner, was a convicted felon and Petitioner did often carry a gun with him. Since the prosecutor's statement was supported by the evidence adduced at trial, Petitioner has failed to show that his counsel's decision to not object to

this statement fell below an objective standard of reasonableness or that he was prejudiced by this decision. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (finding that "[a]n attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

In the same claim, Petitioner asserts that his counsel was ineffective for failing to object to the admission of a magazine clip. With the consent of Dangerfield, her car was searched, and a large-capacity magazine was found inside a small black bag inside of the trunk. Dangerfield's testimony established that her consent to search her vehicle was freely and voluntarily given.

The admission of extrinsic evidence for the purpose of showing a propensity on the part of a defendant to commit a particular crime is generally inadmissible under Louisiana law, although it may be admissible for other purposes. *See* La. Code Evid. art. 404(B). However, a violation of state law is of no moment for purposes of habeas review. Habeas review is limited to a determination of whether the admission of the evidence deprived Petitioner of a fundamentally fair trial. In this case, it did not. The evidence was not "material" to Petitioner's conviction in the sense of a crucial, critical, or highly significant factor. *Thomas v. Lynaugh,* 812 F.2d 225, 230 (Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial.)

Petitioner admitted to the shooting. There was no question as to the identity of the shooter, nor were forensic determinations at issue. As such, the magazine was of little or no significance.

As such, Petitioner has not shown that counsel's alleged deficient performance prejudiced his defense, and this claim is without merit.

### Claim 5[1]: Failure to obtain a psychology expert

Petitioner asserts that his counsel was ineffective for failing to obtain an expert to testify that the bite suffered by Petitioner affected his ability to act rationally: specifically, that the bite affected the nerve endings in his ear and was capable of affecting his equilibrium and ability to rationalize and make decisions.

"[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, Petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Petitioner has not shown that there was such an expert witness, what the expert's testimony would have been, or that an expert would have been beneficial to the defense. Additionally, as previously noted, between the time his ear was bitten and the time of the shooting, Petitioner had time for self-reflection, and any rational trier of fact could have concluded that the mitigating factors which reduce homicide to manslaughter were not present in this case. Accordingly, Petitioner's counsel was not ineffective for failing to obtain an expert, and this claim is without merit.

### Claim 6: Failure to object to references to Petitioner's silence

Petitioner asserts that his counsel was ineffective for failing to object when the prosecutor alluded to Petitioner's silence during certain parts of the police interview. In the police interview Petitioner did not mention self-defense and in his closing statement the prosecutor remarked,

---

[1] Petitioner misnumbered this claim as "Claim #4," which also resulted in the misnumbering of all subsequent claims. The Court has applied the correct numbering.

"[s]elf-defense theory number two which conveniently he did not talk about in his statement to the police. If [self defense] would have factored into his decision to fire a gun, you think that would have told the police that?"

In *U.S. v. Vargas,* 580 F.3d 274 (5th Cir. 2009), the prosecution's closing argument asked the jury to infer Petitioner's guilt on the fact that he did not offer an exculpatory explanation when he was arrested at the border checkpoint. The Court found no error as the prosecution's statement was made in response to a defense theory of the case. The Court additionally found that the prosecution's statements did not affect the fundamental fairness of the trial as the statements were limited to a few moments and there was ample evidence to convict Petitioner.

Similarly, a self-defense theory was presented at trial in the instant matter. Following that, the prosecutor made the one brief statement noted above in response to the defense theory of the case. This limited statement did not affect the fundamental fairness of the trial, and as noted above, there was ample evidence to convict Petitioner. As such, Petitioner's counsel was not ineffective for failing to object during the prosecution's closing argument, nor did the trial court err in failing to admonish the jury, because the complained-of statement did not amount to prosecutorial misconduct as suggested by Petitioner. This claim is without merit.

### Claim 7: Erroneous jury instruction

Petitioner asserts that the trial court erred instructing the jury that they had to find that Petitioner acted with the specific intent to kill or inflict great bodily harm without distinguishing between second-degree murder and attempted second-degree murder. Petitioner correctly asserts that a finding of guilt for the charge of attempted second-degree murder cannot be found based on a finding of specific intent to inflict great bodily harm.

An erroneous jury instruction is subject to harmless error analysis. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993); *Robertson v. Cain*, 324 F.3d 297, 306-07 (5th Cir. 2003). Thus, a federal court may grant habeas relief only if the constitutional error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 631.

In the instant matter, the verdict is well-supported by evidence. Petitioner walked toward the area where the victims' vehicle was parked and opened fire on the vehicle as they attempted to drive away. Petitioner fired approximately seventeen shots from a Glock 9mm. Petitioner's actions exhibited a specific intent to kill. As such, any error in the jury instructions was harmless, and counsel was not ineffective for failing to object.

### Claim 8: Failure to object to witness Hudson's clothing

Petitioner asserts that his counsel was ineffective for failing to object to Berman Hudson's wearing of a prison uniform when testifying as a witness at trial. Any witness who takes that stand may be subjected to questioning about their prior felony convictions. *See generally Hampton v. Hauck,* 383 F.2d 389, 390 (5th Cir. 1967), *citing Johnson v. United States,* 318 U.S. 189 (1943); *Claunch v. United States,* 155 F.2d 261 (5th Cir. 1946). Any additional harm to their credibility stemming from prison attire is incidental, not rising to the level of a constitutional violation. *See Johnson v. Spalding,* 510 F.Supp. 164, 171 (E.D.Wash.1981) (with or without their prison clothes, jurors were aware that witnesses were inmates; prison clothing did not prejudice defense); *Cook v. Beto,* 425 F.2d 1066 (5th Cir. 1970) (fact that co-defendant was dressed in prison clothing when brought into the courtroom for identification did not prejudice the defendant and did not constitute grounds for federal habeas relief).

"The inference to be drawn from prison clothing is that the witnesses were in prison, a fact that is not inadmissible." *United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993). While a

criminal defendant's appearance at trial in prison clothes may implicate his due process right to the presumption of innocence, the tactical decision to present witnesses in prison clothing does not prejudice the defense. *Johnson v. Spalding*, 510 F.Supp. 164, 171 (E.D. Wash. 1981). "The potential harm of shackles-that they make the jury think the witnesses are dangerous or violent-is not present when a witness merely wears prison clothing." *Woods v. Thieret*, 5 F.3d 244, 250 (7th Cir. 1993). As such, the Court can identify no basis upon which it could conclude that the outcome of the trial would have been different had Berman Hudson testified in civilian clothing. As such, Petitioner's counsel was not ineffective for failing to object, and this claim is without merit.

### Claim 9: Failure to challenge admissibility of surveillance videos

Petitioner asserts that his counsel was ineffective for failing to challenge the admissibility of the Ragusa's surveillance videos because they lacked the proper foundation for admission. Petitioner asserts that the videos were inadmissible because neither the videographer nor any employee of Ragusa's testified as to the authenticity of the videos. Petitioner asserts only that the videos were removed from Ragusa's and forwarded to another location to aid in the investigation.

"Once the proponent has made the requisite showing, the trial court should admit the exhibit ... in spite of any issues the opponent has raised about flaws in the authentication. Such flaws go to the weight of the evidence instead of its admissibility." *United States v. Isiwele*, 635 F.3d 196, 200 (5th Cir. 2011) (citation and internal quotation marks omitted) *cited in Castillo-Chavez*, 555 Fed. App'x at 395; *see also Moore v. Denbury Onshore, LLC*, 2016 WL 843384, at *4 n.2 (W.D. La. 2016) (admission of video appropriate where opposing party " 'make[s] no claim of (or offer[s] any reason to suspect) fraud or tampering, nor do[es] [it] say that the videos do not show actual footage of the [event] in question.' ") (quoting *Asociacion De Periodistas De Puerto Rico v. Mueller*, 680 F.3d 70, 79 (1st Cir. 2012)).

In the instant matter, there is no real challenge that the videos themselves are inaccurate or unfairly depict the incident in question or that the videos were somehow altered or changed in the chain of custody. Furthermore, contrary to the Petitioner's assertions, the videos were authenticated by Ulysses, who testified that they accurately reflected the scene of the crime as it appeared on the night in question. *See United States v. Castillo-Chavez*, 555 F. App'x 389, 395 (5th Cir. 2014) (finding that district court did not abuse its discretion in admitting a video tape because "a proper foundation existed for admitting the gas station surveillance tape. Because Reta had knowledge about the individuals and the gas station and explained that the video was an accurate depiction of the events, his testimony authenticated the video."). As such, this claim is without merit.

### Claim 10: Failure to locate Bryan Mathews

Petitioner asserts that his counsel was ineffective for failing to hire an investigator to locate Bryan Mathews, an eyewitness, and call him as a witness for trial. To prevail on an ineffective assistance claim based upon uncalled witnesses, Petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Claims of uncalled witnesses are disfavored, however, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007).

Petitioner asserts only, without specificity, that Mathews would have testified about what he witnessed before, during, and after the incident. Petitioner has not set out the content of Mathews' proposed testimony or made any assertions as to his willingness to testify. As such,

Petitioner has not shown that his counsel was ineffective for failing to locate and call Mathews as a witness, and this claim is without merit.

### Claim 11: Cumulative error

Petitioner asserts that the cumulative effect of his counsel's alleged instances of ineffective assistance deprived him of his right to counsel. Having found no merit in any of Petitioner's claims of ineffective assistance of counsel, this claim is also without merit.

### Certificate of Appealability

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

**RECOMMENDATION**

It is recommended that Petitioner's application for habeas corpus relief be denied and that this proceeding be dismissed with prejudice. It is further recommended that, in the event Petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on February 13, 2024.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**